1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MIGUEL ANGEL VILLALOBOS,

                  Petitioner,

vs.

MATTHEW CATE,  Secretary,

                  Respondent.

Civil No.      12-cv-1386-LAB(BLM)

**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Miguel Angel Villalobos ("Villalobos"), a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"), seeks relief from his August 13, 2009 conviction of charges arising from a domestic violence incident involving his girlfriend, April Herrera.  He was sentenced to a prison term of five years for those crimes.  The California Court of Appeal affirmed the judgment, and his petition for review was summarily denied by the California Supreme Court.  He sought no collateral relief in the state courts. Respondent concedes the Petition is timely and the claims are exhausted, but opposes any habeas relief.  (Ans. 2, ECF No. 9.)[1]  Villalobos was granted two extensions of time to file a Traverse.  (ECF Nos. 13, 16.)  His final deadline passed on January 4, 2013 with no  response.  The matter is accordingly deemed fully briefed and submitted, a consequence the Court informed Villalobos would result from a failure to meet that deadline.  (ECF No. 16.)  In consideration of the lodged record and

---

[1]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

controlling legal authority, this Court **RECOMMENDS** that the Petition be **DENIED**.

## I.    BACKGROUND

In its reasoned decision affirming the judgment, the California Court of Appeal summarized the evidence presented at Villalobos' trial in San Diego County Superior Court Case No. SCS219273. Villalobos does not dispute the accuracy of the summary. A presumption of correctness attaches to state court determinations of factual issues on federal habeas review. 28 U.S.C. §2254(e)(1) (West 2006); Moses v. Payne, 555 F.3d 742, 746, n.1 (9th Cir. 2009).

On May 4, 2008, at about 2:00 in the morning, National City Police Officer Roger Chin and his partner responded to a 911 call regarding a domestic disturbance at an address in National City. Once there, Officer Chin searched the home while another officer spoke to Villalobos. Officer Chin found Shyanne hiding under a bed with her nine-year-old brother, Abraham. After Officer Chin identified himself as a police officer, it took Shyanne about 30 seconds to come out from under the bed. Although Shyanne was crying at first, she became friendlier after he let her know that everything was "okay." Abraham, however, was very scared and it took Officer Chin a long time to coax him out from underneath the bed.

Abraham told Officer Chin that Villalobos had choked April, and then punched and kicked her several times. Abraham called 911, but did not try to intervene because he thought Villalobos might hit him. Shyanne similarly related that Villalobos had choked Herrera, punched her in the face, kicked her torso several times, and then cut her arm with a knife. Shyanne told Officer Chin that Villalobos got mad at her, went to the kitchen, grabbed a mop and hit her twice on the left foot. He tried to hit her again, but she ran off. Shyanne claimed she was scared the entire time.

In the meantime, another officer spoke to Villalobos and Herrera, who both appeared to be under the influence of alcohol. The police decided to arrest Villalobos. Villalobos became combative and argumentative, and refused to get inside the police car. After about five minutes, the officers were able to get Villalobos inside the vehicle.

About five months after the incident, district attorney investigator Laura Coulson interviewed Shyanne at the district attorney's office. Shyanne told Coulson that Villalobos had choked Herrera, and cut her hand with a knife. Shyanne stated that she yelled at Villalobos to stop cutting Herrera, and that Villalobos got mad and hit her backside with a mop. Shyanne was very scared.

At trial, however, Shyanne claimed that she did not recognize Villalobos's photograph, and denied telling the police that Villalobos had choked, kicked, or cut Herrera. Shyanne initially claimed that she could not remember anything about a mop, but later admitted that she had made prior statements that Villalobos had hit her face with a mop. The trial court took judicial notice of Shyanne's preliminary hearing testimony where she testified that Villalobos had hit her face with a mop handle.

Shyanne later remembered testifying at the preliminary hearing that Villalobos used the handle of a mop to hit her feet, and claimed that is what had happened. During cross-examination, Shyanne testified that she was standing behind Villalobos when he "yanked" the mop from Herrera and, in doing so, the mop hit her foot. She

1   replied "yes," when asked whether it had been an accident.  She claimed that she did
2   not move or do anything when the mop hit her foot.  On redirect, Shyanne stated that
    Villalobos "was trying to take away the mop from my mom so he can put it back, and
3   then he--he pushed it back and then it hit my foot."

4           Abraham described the mop as being "like a big stick" with "a slide thingy" that
    went "up and down" to wring the water out.  Although he said it had metal and plastic
5   parts, it was not a flat sponge mop; rather the end looked like hanging hair.

6   (Lodgment No. 5, People v. Villalobos, No. D056243 (Cal. Ct. App., Apr. 5, 2011), slip op. at 2-4.)

7           On August 12, 2009, after deliberating about one day, the jury convicted Villalobos of assault

8   with a deadly weapon or by means likely to produce great bodily harm, corporal injury to a spouse or

9   roommate, felony child abuse, false imprisonment, resisting an officer, and disobeying a subsequent

10  court order not to approach Herrera and misdemeanor vandalism associated with a separate event

11  about two months after the assault incident.  (Lodgment No. 1, CT vol. 2, pp. 0282-0293, 0413-0424;

12  Lodgment No. 2, RT vol. 9.)  The court sentenced him on November 6, 2009 to a total prison term of

13  five years.  (Lodgment No. 1, CT vol. 2, pp. 0335-0336.)

14          Villalobos appealed, alleging:  (1) insufficient evidence supports the child abuse conviction;

15  (2) insufficient evidence supports the conviction for assault with a deadly weapon against Shyanne;

16  (3) the trial court abused its discretion when it ruled that if the defense introduced evidence of

17  Herrera's violent conduct while drinking, the court would permit rebuttal evidence of Villalobos'

18  character, including his prior aggravated assault conviction; (4) ineffective assistance of counsel

19  prevented him from presenting evidence about Herrera that was "critical" to his defense; (5) jury

20  instruction error; and (6) cumulative trial error.  (Pet. 26-67, ECF No. 1; Lodgment No. 3, Opening

21  Brief.)  In its April 5, 2011 reasoned decision, the court of appeal rejected his individual claims and

22  found it accordingly need not reach his cumulative error claim. (Lodgment No. 5, slip op. at 2.).

23  Villalobos presented essentially the same arguments to the California Supreme Court.  (Pet. 77, ECF

24  No. 1 (citations omitted); Lodgment No. 6, Petition For Review.)  The California Supreme Court

25  summarily denied the petition. (Lodgment No. 7 (Cal. S193041, Jun. 17, 2011).)

26          In his federal habeas petition, Villalobos alleges as Ground One that he received ineffective

27  assistance of counsel.  (Pet. 13-17, ECF No. 1.)  As Ground Two, he alleges insufficient evidence

28  supports his felony child abuse conviction.  (Id. pp. 18-19.)  As Ground Three, he alleges insufficient

1   evidence supports his conviction for assault with a deadly weapon or with force likely to cause great

2   bodily injury. (Id. pp. 19-20.) As Ground Four, he alleges his due process right to present a defense

3   was violated by the trial court's evidentiary rulings which deprived the jury of "a complete picture of

4   what happened." (Id. pp. 20-23.) As Ground Five, he alleges jury instruction error in violation of due

5   process and his right to trial by jury. (Id. pp. 23-25.) As Ground Six, he alleges cumulative error

6   violated his due process rights.[2]

7        Villalobos notified the Court in August 2012 of a change of address, from Kern Valley State

8   Prison to a street address in Imperial Beach, explaining he was no longer incarcerated. (ECF No. 7;

9   see also ECF No. 15.) Respondent served Villalobos with the Answer to the Petition at his Imperial

10  Beach address. (Answer 23, ECF No. 9-1, Certificate of Service, dated August 28, 2012.) Although

11  federal courts "have no jurisdiction to hear a case that is moot, that is, where no actual or live

12  controversy exists," Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) (citation omitted), they retain

13  jurisdiction as long as a petitioner continues to have a personal stake in the outcome of the litigation.

14  Spencer v. Kemna, 523 U.S. 1, 7 (1998). Less than five years ago, Villalobos received a five-year

15  sentence imposed for the 2009 convictions he challenges here. Absent any indication to the contrary,

16  the Court proceeds on the assumption Villalobos was released on parole.

17       Release on parole does not moot a parolee's pending habeas corpus proceedings because "an

18  inmate-turned-parolee remains in the legal custody of the California Department of Corrections

19  through the remainder of his term, [Cal. Penal Code] § 3056, and must comply with all of the terms

20  and conditions of parole . . . ." Samson v. California, 547 U.S. 843, 851 (2006). Such restrictions

21  satisfy the "in custody" requirement of 28 U.S.C. § 2254. Conditions of parole constitute a concrete

22  injury "caused by the conviction and redressable by invalidation of the conviction" for purposes of

23  mootness analysis. Spencer, 523 U.S. at 7-8. The principle of redressability is the same whether the

24  restrictions on the petitioner's liberty are due to his physical confinement in a cell or due to

25  enforceable restraints on his activities and movement outside of prison while on parole. Jones v.

26  Cunningham, 371 U.S. 236, 240-43 (1963). A prevailing petitioner who has been released to a

27           [2] The scanned Petition is missing its page 13. (See Pet. 24-25, ECF No. 1.) Electronically-numbered
     Petition page 24 is document page 12, where Villalobos' Ground Five claim concludes. The lodged copy of
28   the Petition states Villalobos' Ground Six Cumulative Error claim at pages 13-14.

determinate period of parole can obtain an order directing state authorities to credit him with the time served in prison in violation of his constitutional rights towards his determinate period of parole supervision.  A case or controversy exists as long as the limitations on the petitioner's freedom would not be present if his petition were granted by the reach of the remedy.  Accordingly, Villalobos' Petition is not moot.

## II.     DISCUSSION

### A.     Legal Standards For Federal Habeas Relief

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Federal habeas courts may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, (2005).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs review of Villalobos' claims because he filed his federal habeas petition after that statute's 1996 effective date.  Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).  AEDPA imposes a " 'highly deferential standard for evaluating state-court rulings,' " requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002), quoting Lindh, 521 U.S. at 333 n.7.  Habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. __, 131 S.Ct. 770, 786 (2011), quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring). "AEDPA prevents defendants -- and federal courts -- from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. __, 130 S.Ct. 1855, 1866 (2010).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 131 S.Ct. at 786-87.

12cv1386-LAB(BLM)

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Richter, 131 S.Ct. at 784.  Habeas relief is available under the first exception if the state court result "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see Lockyer v. Andrade, 538 U.S. 63, 73-76 (2003); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (distinguishing the 28 U.S.C. § 2254(d)(1) "contrary to" test from its "unreasonable application" test).  To be found an "unreasonable application" of the  precedent, the state court decision must have been "more than incorrect or erroneous;" it "must have been 'objectively unreasonable.' "  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citations omitted); Renico, 130 S.Ct. at 1866.  A lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1).  Carey v. Musladin, 549 U.S. 70, 77 (2006); see Moses, 555 F.3d at 754 ("[W]hen a Supreme Court decision does not 'squarely address[]' the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and a federal habeas court "must defer to the state court's decision"), citing, inter alia, Wright v. Van Patten, 552 U.S. 120, 123 (2008).  "Circuit precedent may provide 'persuasive authority' for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent", but "only Supreme Court holdings are binding on state courts, and 'only those holdings need be reasonably applied.' "  Rodgers v. Marshall, 678 F.3d 1149, 1155 (9th Cir. 2012) (citations omitted).

Under the second AEDPA exception, relief is available only if the state court based its result "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)").  The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

Federal courts apply AEDPA standards to the "last reasoned decision" by a state court. <u>Campbell v. Rice</u>, 408 F.3d 1166, 1170 (9th Cir. 2005); *see* <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim [are presumed to] rest upon the same ground").  Federal habeas courts reviewing prisoners' claims under 28 U.S.C. § 2254 apply the harmless error standard of <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) to "assess the prejudicial impact of constitutional error in a state-court criminal trial." <u>Fry v. Pliler</u>, 551 U.S. 112, 121 (2007); *see* <u>Baines v. Cambra</u>, 204 F.3d 964, 977 (9th Cir. 2000) (the Ninth Circuit applies the <u>Brecht</u> harmless error standard "uniformly in all federal habeas cases under § 2254").  Thus, even if constitutional error occurred, the petitioner must still demonstrate prejudice, that is, that the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 623, 637 (internal punctuation and citation omitted).

## B.   Grounds Two And Three:  Insufficient Evidence Claims[3]

### 1.   Legal Standard

"As a matter of federal constitutional law, 'the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005), *quoting* <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  California courts apply the federal standard to resolve insufficient evidence challenges. *See* <u>People v. Johnson</u>, 26 Cal.3d 557, 578 (1980), *citing* <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").  The court of appeal identified <u>Jackson</u> as the applicable constitutional standard in rejecting Villalobos' insufficient evidence claims.  (Lodgment No. 5, slip op. at 4-5.)  Only if the state court reached a result contrary to or unreasonably applied <u>Jackson</u> in consideration of the facts of the case may a federal habeas court grant relief on this ground.  28 U.S.C. § 2254(d); <u>Juan</u>, 408 F.3d at 1274 n.12; *see* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990).

---

[3] For clarity, the Court will address Villalobos' allegations in a different order than he presented them in his petition.

"[A] reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously. . . ."  McDaniel v. Brown, 558 U.S. 120, __, 130 S.Ct. 665, 672 (2010) (citation omitted); *see* Schlup v. Delo, 513 U.S. 298, 330 (1995) ("The Jackson standard . . . looks to whether there is sufficient evidence which, if credited, could support the conviction").   Where several inferences arise from admitted evidence, the jury is relied upon to "sort them out in light of the court's instructions."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  Courts must presume "that the trier of fact resolved any . . . conflicts [in historical facts that support conflicting inferences] in favor of the prosecution, and must defer to that resolution."  Wright v. West, 505 U.S. 277, 296-97 (1992), *quoting* Jackson, 443 U.S. at 326.   A reviewing court may not reweigh the evidence nor "make its own subjective determination of guilt or innocence."  Jackson, 443 U.S. at 319 n.13; Walters, 45 F.3d at 1358.

### 2.   Ground Two:  Sufficient Evidence Supports Villalobos' Felony Child Abuse Conviction

In Ground Two, Villalobos argues that there was insufficient evidence to support his conviction for felony child abuse.  (Pet. 18, ECF No. 1.)  Specifically, Villalobos asserts that he was convicted "pursuant to California Penal Code section 273a, subdivision (a) which required a finding that my actions against Shyanne were 'under circumstances or conditions likely to produce great bodily injury or death.' (C.T. pp. 94, 420.)" Id.  Villalobos explains that he only "lightly" hit Shyanne on her foot or backside and that there was no evidence that she was hurt or otherwise in danger and, therefore, the conviction cannot stand.  Id. at 18-19.

California Penal Code section 273a, subd. (a) describes alternative means by which an accused may commit felony child abuse including, in pertinent part:  "Any person who, under circumstances or conditions likely to produce great bodily harm or death, . . . willfully causes or permits that child to be placed in a situation where his or her person or health is endangered" is guilty of the crime.  Villalobos' jury was so instructed.  (Lodgment No. 2, RT vol. 4, pp. 170-171.)  The court of appeal emphasized that the "purpose of the statute is 'to protect a child from an abusive situation in which the probability of serious injury is great,' " and that the statute contains " 'no requirement that the actual result be great bodily injury.' "  (Lodgment No. 5, slip op. at 6-7 (citations omitted).)  Federal

habeas courts may not revisit state court determinations on state law issues such as the elements and scope of crimes codified under state law. Estelle, 502 U.S. at 68; Bradshaw, 546 U.S. at 76.

The court of appeal verified that the jury was properly instructed with CALCRIM No. 821 in conformity with the statute defining the crime. (Lodgment No. 5, slip op. at 7.) The court also noted that the jury received instruction on the lesser included offense of child abuse but still found Villalobos guilty of the greater crime of "child abuse likely to produce great bodily harm." (Lodgment No. 5, slip op. at 7; see Lodgment No. 1, CT vol. 2, pp. 0263-0267; Lodgment No. 2, RT vol. 4, pp. 170-171.) The court found sufficient evidence supported his conviction of the greater offense because his actions exposed Shyanne to circumstances or conditions of endangerment. As the court explained:

> The jury could have rationally concluded that Villalobos's act of striking a child in the face with a mop handle during a drunken confrontation with the child's mother produced circumstances or conditions which placed the child in a situation where her person or health might have been endangered, and which were likely to produce great bodily injury or death. Again, that the child did not suffer any injury is not dispositive.

(Lodgment No. 5, slip op. at 7 (citation omitted).)

A review of the trial record, including Herrera's testimony, the children's testimony, and that of the police who responded to the 911 call, reveals ample evidence supporting the appellate court's characterization of the incident and legal conclusion. According to Herrera, in the very early hours of the morning, Villalobos and Herrera returned home from a bar, quite intoxicated, and engaged in a violent confrontation, including the use of a knife. (See, Herrera testimony, Lodgment No. 2, RT vol. 6 at 535-539, 557.) Herrera's son, Abraham, testified that he heard and saw Herrera and Villalobos screaming, crying, and fighting and called 911 for help. (Abraham testimony, Lodgment No. 2, RT vol. 4 at 195-99.) Abraham said that Villalobos hit Herrera and grabbed her around the chest. (Id. at 199-200.) Abraham also said that he was scared about the fighting and afraid that Villalobos might hit him so he hid in a closet. (Id. at 202-03, 207-08.) Villalobos' daughter, Shyanne, denied almost all of the testimony that she provided during the preliminary hearing and many of the statements that she made to officers but she did testify that Villalobos and Herrera were fighting and that Villalobos accidentally hit her foot with the handle of a mop. (Shyanne testimony, Lodgment No. 2, RT vol. 5 at 244-71.) Shyanne also admitted that she previously testified that Villalobos used the mop to hit her face but claimed she no longer could remember if that was true. (Id. at 253-54.) Officer Chin testified

that when the officers arrived at the house, both children were hiding under a bed and seemed scared. (Chin testimony, Lodgment No. 2, RT vol. 5 at 276.) Chin spoke with both children and testified that Shyanne told him that Villalobos and Herrera were arguing loudly and when she entered the living room, she saw Villalobos choking, punching (including in the face), and kicking Herrera. (Id. at 277-79.) Chin also said that Shyanne told him that Villalobos cut Herrera's arm with a knife. (Id. at 279-80.) Shyanne told Chin that she had yelled "no, no, no" at Villalobos and Herrera and that Villalobos had then gone into the kitchen, grabbed a mop, and hit her on the foot with it two times, so Shyanne ran away. (Id. at 280-81.) Chin also testified that he interviewed Abraham and that Abraham also told him that Villalobos and Herrera were fighting and yelling, and that Villalobos choked, punched, and kicked Herrera. (Id. at 282-84.) A retired DA Investigator testified that she interviewed Abraham and Shyanne and they told her essentially the same facts. (Coulson testimony, Lodgment No. 2, RT vol. 6 at 416-54.) Coulson also testified that Shyanne said that Villalobos hit her backside with a mop. (Id. at 422.) Accordingly, the record contains substantial evidence indicating that Villalobos hit Shyanne with the handle of a mop in either the face, body, or foot while he was drunk, angry, and violent. As the appellate court stated, a reasonable jury could conclude from this evidence that the circumstances were likely to produce great bodily harm or death.

Because the trial record contains, and the appellate court identified, the requisite "some evidence" supporting each element of the felony child abuse, the state courts did not err in determining that the Jackson standard was satisfied. *See* Schlup, 513 U.S. at 330; Wright, 505 U.S. at 296-97. The Court therefore **RECOMMENDS** that relief on Ground Two be **DENIED**.

### 3. Ground Three: Sufficient Evidence Supports Villalobos' Assault With And Personal Use Of A Deadly Weapon Conviction

In Ground Three, Villalobos argues that there was insufficient evidence to support his conviction for assault with a deadly weapon and the enhancement that he personally used a deadly weapon. (Pet. 19, ECF No. 1.) Specifically, Villalobos argues that the mop was not a deadly weapon and that he did not use it in a way that was likely to produce death or great bodily injury. Id.

The jury was properly instructed with the elements of the crime and accompanying definitions. (Lodgment No. 2, RT vol. 4, pp. 166-168.) In rejecting this claim, the court of appeal explained that,

1  under state law,

> 2  [a] person may commit an assault without making actual physical contact with the victim because the statute focuses on *use* of a deadly weapon; whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 (*Aguilar*).)  A deadly weapon is " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' " (Id. at pp. 1028-29.)  Some objects may be deadly weapons as a matter of law, while other objects may be considered a deadly weapon under certain circumstances." (Id. at 1029).  In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.  (*Ibid.*)
>
> The jury heard conflicting evidence on whether Villalobos accidentally or willfully struck Shyanne with the mop.  Viewing the evidence in the light most favorable to the verdict, the jury could have concluded that Villalobos willfully assaulted Shyanne with the mop handle in anger when she yelled at him to stop hurting Herrera, and that he tried to hit her again as she ran away.  The evidence was similarly conflicting on whether Villalobos struck Shyanne's foot, backside or face.  Again, the jury could have resolved this conflict by concluding that Villalobos had struck Shyanne in the face.
>
> A jury could rationally conclude that the long rigid handle of a mop directed toward the face or body of a small child by an intoxicated man is an object capable of causing, and likely to cause, great bodily injury or death.  That Shyanne did not suffer any injury is irrelevant.  (*Aguilar*, *supra*, 16 Cal.4th at p. 1028.)  Accordingly, we are persuaded that sufficient evidence supported the verdicts that Villalobos assaulted Shyanne with a deadly weapon, and that he personally used a deadly weapon.

(Lodgment No. 5, slip op. at 6.)

As discussed in the previous section, there was substantial evidence presented to the jury that Villalobos was drunk and angry and intentionally hit Shyanne, a small child, in the face, body, or foot with the handle of a mop.  From this evidence, a reasonable jury could properly conclude that the mop was a deadly weapon.  Because there was substantial evidence to support the jury's verdict, the state court's decision was not unreasonable.

Villalobos also argues that the absence of a demonstrative exhibit, such as the mop or a photo of the mop, renders the evidence insufficient for the conviction. (Pet. 20, ECF No. 1.) Trial witnesses described the object used in the assault as a household mop, irrespective of the kind of cleaning head affixed to the end of the handle variously described by the children as a squeeze-type head or a floppy fabric head.  (See Lodgment No. 2, RT vol. 4 at 215-16, 259.)  In common experience, a mop necessarily has a long rigid handle essential to its intended use.  The court of appeal implicitly and reasonably assumed an object familiar to most people required no demonstrative exhibit in these

11

circumstances.  A federal habeas court may not reweigh the evidence nor substitute its own view of the evidence for that of a jury or of a state reviewing court.  Jackson, 443 U.S. at 319.

As discussed above, sufficient evidence supports the deadly weapon conviction and enhancement.  The state court result on these issues is not contrary to nor an unreasonable application of Jackson, 443 U.S. at 318-19, nor is the result "based on an unreasonable determination of the facts" in light of the state court record.  28 U.S.C. § 2254(d)(1), (2); see Richter, 131 S. Ct. at 785; Juan H., 408 F.3d at 1275 n.13.  Accordingly, this Court **RECOMMENDS** that relief on Ground Three be **DENIED**.

### C.    Ground Four:  Evidentiary Ruling Error

In Ground Four, Villalobos contends the court's evidentiary ruling violated due process because it prevented his attorney from presenting evidence "crucial" to his defense.  (Pet. 20-21, ECF No. 1.) The court of appeal succinctly summarized this claim:  "Villalobos contends the trial court abused its discretion and violated his state and federal rights to a fair trial and to present a defense by ruling that his proposed evidence of Herrera's conduct while drinking was character evidence and not habit evidence."  (Lodgment No. 5, slip op. at 9.)

"A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as those embodied in evidentiary and procedural rules.  United States v. Scheffer, 523 U.S. 303, 308 (1998) (citations omitted).  Trial courts have considerable discretion to admit or to exclude evidence.  A trial court's evidentiary rulings applying state law ordinarily do not present a federal question cognizable on federal habeas review.  See Estelle, 502 U.S. at 67-68. It is "irrelevant" to federal review whether such rulings are correct as a matter of state law; the only question "is whether the ruling rendered the trial so fundamentally unfair as to violate due process." Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir.2008) (citation omitted).  Accordingly, to the extent Villalobos is arguing that he is entitled to habeas relief because the trial court's ruling was incorrect, the argument is without merit.

When a petitioner challenges the admission of particular evidence, reviewing federal courts will not find a due process violation as long as the challenged evidence is relevant to an issue in the case and a permissible inference can be drawn from that evidence.  Estelle, 502 U.S. at 70.  "Only if

12

12cv1386-LAB(BLM)

1   there are *no* permissible inferences the jury may draw from the evidence can its admission violate due

2   process." Jammal, 926 F.2d at 920.  Similarly, when a petitioner challenges the exclusion of particular

3   evidence, the trial court's decision must be so fundamentally unfair as to violate due process before

4   federal habeas relief is warranted.  *See* Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir.1999); Moses,

5   555 F.3d at 757 (the exclusion of evidence "is unconstitutional only where it 'significantly undermined

6   fundamental elements of the defendant's defense' "), *quoting* Scheffer, 523 U.S. at 315.  Even when

7   a state trial court's erroneous evidentiary ruling is found to have violated the defendant's constitutional

8   rights, the error is still evaluated by federal habeas courts under the Brecht "substantial and injurious

9   effect or influence" standard.  Baines, 204 F.3d at 977.

10        Villalobos identifies the allegedly erroneous ruling as "the trial court . . . held that the evidence

11   of April's behavior while intoxicated was admissible as character evidence and therefore the People

12   could introduce rebuttal evidence of my previous conviction without danger of prejudice." (Pet. 23,

13   ECF No. 1, identifying the purported prejudice as:  the trial court's "application of [California

14   Evidence Code rules 1103(b), 1101, and 352] prevented trial counsel from presenting evidence crucial

15   to my defense, evidence that went to the very heart of my innocence.").  He contends that ruling

16   deprived him of "a meaningful opportunity to present a complete defense." (Pet. 21, ECF No. 1.)  He

17   relies for that proposition on the distinguishable case of Lunbery v. Hornbeak, 605 F.3d 754 (9th Cir.

18   2010).  The Lunbery court granted a petitioner federal habeas relief from her second-degree murder

19   conviction, finding the state appellate court unreasonably applied federal law in its determination that

20   the trial court's hearsay exclusion of testimony that a third person admitted his partners murdered the

21   victim did not violate her due process right to present a defense.  The Lunbery court applied the

22   holding from Chambers v. Mississippi, 410 U.S. 284, 302-303 (1973), addressing the

23   unconstitutionality of excluding probative admissible evidence that another person may have

24   committed the crime.  In contrast, the evidence Villalobos contends was unconstitutionally excluded

25   was not crucial to his defense because it did not implicate "constitutional rights directly affecting

26   ascertainment of guilt." Chambers, 410 U.S. at 302.  His trial court merely exercised its discretion in

27   its considered application of routine state law evidentiary rules.

28        Villalobos also relies on DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001) for the

general proposition, "[t]he Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." (Pet. 21, ECF No. 1.)  There, the Ninth Circuit granted habeas relief to a wife convicted of murdering her husband whose defense was imperfect self-defense.  The trial court had excluded  both the wife's testimony about her state of mind as well as the husband's "handwritten corroboration of it" in the form of his journal, depriving the jury of evidence crucial to establishing that defense.  DePetris, 239 F.3d at 1059.  Those erroneous rulings were not harmless under the Brecht standard because, "given the subjective element of imperfect self-defense, the erroneous exclusion of this evidence was not mere evidentiary error"; rather, it "unconstitutionally interfered with petitioner's due process right to defend against the charges. . . ."  Id. at 1058-59.  In contrast, the trial court's ruling in Villalobos' case merely established a consequence should defense counsel present cumulative evidence of Herrera's tendency to violence when she drinks, an admission she herself made at trial.  There is no substantial likelihood that additional evidence of her admitted tendency would have affected the outcome of the trial, particularly as self-defense was not Villalobos' trial theory.[4]

While acknowledging that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" (Pet. 22, ECF No. 1), Villalobos cites Scheffer, 523 U.S. at 308,  among other cases where defendants have argued that state evidentiary rules by their own terms impinge upon the constitutional right to present a complete defense, inferring that he is making such a claim.   However, he attempts no demonstration of such statutory deficiencies in the rules of evidence applied in his case.  His other cited authority addresses factual circumstances where something more prejudicial than mere evidentiary error was injected into the analysis, and those cases therefore do not advance his argument.  (Pet. 56, ECF No. 1; Lodgment No. 3, Appellant's Opening Brief, p. 22.).  Accordingly, the Court finds no support for a possible challenge to the constitutionality of the cited evidentiary rules and interprets Villalobos' challenge to

---

[4]  Villalobos also cites the distinguishable case of Crane v. Kentucky, 476 U.S. 683, 689-90 (1986), where the issue was an erroneous pre-trial exclusion of evidence surrounding the voluntariness of the defendant's confession.

be one addressed to the specifics of the instant case.

The court of appeal summarized the procedural and evidentiary context of Villalobos' claim as follows:

> In defense of the charges against him, Villalobos maintained that Herrera was intoxicated at the time of the incident and he was merely trying to keep her from hurting herself.  To bolster this theory, the defense sought to introduce evidence of Herrera's conduct during an incident in August 2008 to show that Herrera has a habit of becoming violent and despondent when she is drinking.  (§ 1105 ["Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."].)  The prosecution argued, however, that evidence of Herrera's conduct in August 2008 constituted character evidence under section 1103, and if such evidence was offered, the People should be permitted to introduce rebuttal evidence that Villalobos had been convicted of aggravated assault in 1997 under subdivision (b) of section 1103.  The trial court reserved ruling on the issue pending further briefing from the parties.
>
> During trial, the court indicated that the current incident and Herrera's August 2008 arrest were insufficient to show a habit or custom under section 1105; rather, evidence of Herrera's conduct constituted character evidence under subdivision (a) of section 1103 that would "open the door" for the prosecutor to present evidence of Villalobos's character for violence under subdivision (b) of section 1103.  The defense later learned that Herrera had also been arrested in December 2004 on a domestic violence charge.[5]  The trial court ultimately ruled that if the defense offered evidence of Herrera's character for violence, it would allow the People to rebut that with evidence of Villalobos's character for violence as allowed by subdivision (b) of section 1103.

(Lodgment No. 5, slip op. at 8-9.)

The court of appeal found no abuse of discretion in the trial court's determination that evidence of Herrera's violent tendencies during domestic disputes and conduct while drinking fell under the state statutory rules governing "character" evidence, permitting the trial court to rule that "if Villalobos introduced [Herrera's prior behavior evidence], the prosecution could introduce character evidence of Villalobos' violent tendencies" under applicable state evidentiary rules.   (Lodgment No. 5, slip op. at 9-11.)  This Court may not revisit those state law determinations.  <u>Bradshaw</u>, 546 U.S. at 76.  The court of appeal also briefly addressed and disposed of his constitutional arguments:

> Villalobos also argues that the trial court's ruling that Herrera's prior conduct constituted character evidence violated his state and federal rights to a fair trial and to present a defense.  As we just explained, however, the trial court correctly ruled that Herrera's prior conduct constituted character evidence.  The application of ordinary rules of evidence did not violate Villalobos's state and federal rights to due process or a fair trial.  (*People v. Boyette* (202) 29 Cal.4th 381, 427-428.)

---

5   The prosecutor withdrew Herrera as a prosecution witness based on her belatedly-discovered December 2004 domestic violence arrest.  (Lodgment No. 2, RT vol. 4,  pp. 126-127, 136-138.)

(Lodgment No. 5, slip op. at 11.)

The evidentiary ruling at issue here did not foreclose the presentation of evidence of Herrera's combative character, but rather forced Villalobos to make a strategic choice whether to open the door to rebuttal impeachment evidence damaging to Villalobos' theory of defense.  Those circumstances fall short of the type of ruling that categorically excludes critical defense evidence warranting due process or Sixth Amendment relief.  Moreover, even if the trial court erred in its character evidence ruling and the error violated the United States Constitution, Villalobos has not demonstrated any substantial likelihood that the outcome of the trial would have been more favorable to him had the jury heard the additional evidence.

In light of the entire trial record, the Court finds that the allegedly erroneous evidentiary rulings at trial did not violate Villalobos' constitutional rights.  The state court result denying relief on this ground is not contrary to nor an unreasonable application of controlling federal authority and is objectively reasonable.  Accordingly, the Court **RECOMMENDS** that relief on Ground Four be **DENIED**.

### D.      Ground Five:  Instructional Error

Villalobos contends that the trial court erred in instructing the jury with CALCRIM No. 357, California's standard instruction on adoptive admissions, "with regards to excerpts of two phone calls between myself and April while I was in jail."  He argues that instruction "allows a jury to draw a conclusive inference that a defendant has admitted a statement as true when that statement is made out of court by another that accuses the defendant of the crime and the defendant does not deny it." (Pet. 23, ECF No. 1, citing "R.T. pp. 688-89; CT 246".)  Respondent contends this claim presents no federal question, nor was the state court's rejection of the claim based on an objectively unreasonable determination of the facts.  (Ans. 19, ECF No. 9-1.)  The challenged instruction informed the jury:

> . . . "If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with the commission of the crime and the defendant did not deny it, you must decide whether each of the following is true:  [¶] 1. The statement was made to the defendant or in his presence; 2. The defendant heard and understood the statement; 3. The defendant would, under all the circumstances, naturally have denied the statement if he thought it was not true; AND 4. The defendant could have denied it but did not. [¶]  If you decide that all of these requirements have been met, you may conclude that the defendant admitted the

1    statement was true. [¶]  If you decide that any of these requirements have not been met,
     you must not consider either the statement or the defendant's response for any
2    purpose."

3    (Lodgment No. 5, slip op. at 13; *see* Lodgment No. 1, CT vol. 1, p. 0198, CALCRIM No. 357,

4    Lodgment No. 2, RT vol. 7, p. 586.)

5          The jury heard evidence of telephone calls between Villalobos and Herrera
     while both were awaiting trial.  During one call, Herrera accused Villalobos of
6    attacking her, with Villalobos responding, "Mmm, hey do you have my wallet or my
     cell phone?"  The jury then heard evidence of an *earlier* telephone call where
7    Villalobos told Herrera to "stop lying" after she stated, "You just started beating on
     me." Over[] Villalobos's objections, the trial court instructed the jury with CALCRIM
8    No. 357 regarding adoptive admissions.

9    (Lodgment No. 5, slip op. at 13.)

10         Defense counsel asked the trial court to revisit the issue of the adoptive admission instruction

11   after both sides had rested, arguing the instruction should not be given.  She argued:

12         But the order of the calls has the impact.  The very first call that was made to
     her was the call of May 4th where he said to her, "Stop lying." [¶]  So I would object
13   to that coming in because the first time he had an opportunity to object to it to say
     something to deny it, he did, which was in the May 4th call.
14

15    (Lodgment No. 2, RT vol. 7, pp. 651-652.)

16         The prosecutor disagreed:

17         I would just argue that it's still an adoptive admission, whether he denied it
     before.  They will get both calls where he denies, but [t]he[y] will have one call where
18   he says, "Hmmm."  [¶]  I think it's up to them to find whether or not it was an adoptive
     admission, and they should have the opportunity by them giving [*sic*] that instruction.
19

20   (Lodgment No. 2, RT vol. 7, p. 652.)

21         The trial court noted the first call played to the jury was from May 5th, "where the victim says

22   that you attacked me like a dog, in essence."  (Lodgment No. 2, RT vol. 7, p. 653).

23         And the response is "Hmmm," M-M-M, "Hey, do you have my wallet or my cell
     phone?"  [¶] Although there is a similar statement in the previous call, they're two
24   separate calls at two separate times, and I think that – really there is the evidence that's
     been presented.  It can be argued, however, the attorneys want to argue it in terms of
25   whether the jury should consider that an adoptive admission.  [¶]  But the instruction,
     I think, gives enough flexibility that whether or not they want to consider it an adoptive
26   admission that they can consider all the evidence in making that determination.  [¶]
     So I will give 357.
27

28   (Lodgment No. 2, RT vol. 7, p. 653.)

"The Due Process Clause of the Fourteenth Amendment. . . prohibits the States from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Francis v. Franklin, 471 U.S. 307, 313 (1985) (citations omitted).  Challenges to jury instructions normally present issues of state law involving no constitutional question cognizable on federal habeas review, unless the petitioner demonstrates that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 71-72.  Reviewing courts may not judge a challenged instruction "in artificial isolation," but rather must consider it "in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72-73; see Henderson v. Kibbe, 431 U.S. 145, 154 (1977) ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal").

Villalobos "maintains that by presenting the telephone calls to the jury in reverse chronological order, such that the jury did not hear his denial of Herrera's accusation before it heard his evasive response, that the instruction created an unconstitutional permissive inference." (Lodgment No. 5, slip op. at 15.)  He relies on Ulster County Court v. Allen, 442 U.S. 140, 157 (1979) for the proposition that:  "A jury instruction that creates a 'permissive inference,' that is, an inference the jury may choose to credit or reject, violates due process where 'there is no rational way' the trier of fact could make the 'connection permitted by the inference.' " (Pet. 24, ECF No. 1.)  When a "permissive inference leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference."  Allen, 442 U.S. at 157. The Allen Court reversed habeas corpus relief granted to state prisoners who challenged as unconstitutional the application of a New York state law presumption, finding that the instruction contained a permissive  inference not a mandatory one and that the lower court misapplied the analysis.

Contrary to Villalobos' contention that "instructing the jury with CALCRIM 357 in the absence of evidence to deny an accusation falls squarely under the Ulster definition for unconstitutional

inferences" (Pet. 24, ECF No. 1), a permissive inference like the one contained in the adoptive admission instruction "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Francis, 471 U.S. at 314-315, *citing* Allen, 442 U.S. at 157-163.  It would only violate due process "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id.  Here, the court of appeal reasonably concluded Villalobos' "evasive response to Herrera's accusation could constitute an adoption of [her] statement that he had attacked her, thereby making the instruction on the issue proper." (Lodgment No. 5, slip op. at 14.)

> As Villalobos implicitly recognizes, CALCRIM No. 357 does no more than offer the jury a permissive inference which the jury *could* draw from the evidence. A jury instruction that "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion" does not unconstitutionally lessen the prosecution's burden of proof. (*Francis v. Franklin* (1985) 471 U.S. 307, 314, fn. omitted.)  Additionally, the jurors received transcripts of the telephone calls that included the date[s] of the calls.  Thus, we reject Villalobos' suggestion that the order the jury heard the evidence regarding the telephone calls rendered the instruction improper.

(Lodgment No. 5, slip op. at 15, also reasonably rejecting Villalobos' additional argument that the instruction lowered the prosecution's burden of proof and the result of his trial would have been more favorable to him had the instruction not been given.)

Sufficient evidence supported the connection permitted by the CALCRIM 357, as is evident from the court of appeal's summary of the evidence. (Lodgment No. 5, slip op. at 2-4.)  Moreover, the instruction implicated only a minor part of the evidentiary basis for the jury's verdicts.  Even if the Court were to conclude the instruction should not have been given, considered in the context of the entire jury charge and the totality of the trial evidence, it cannot be reasonably construed as having had a "substantial and injurious effect on the verdict." Brecht, 507 U.S. at 637.  The state court's rejection of Villalobos' instructional error claim accordingly was not contrary to nor an unreasonable application of United States Supreme Court authority, and the result was an objectively reasonable determination of the facts from the evidence presented. The Court accordingly **RECOMMENDS** that relief on Ground Five be **DENIED**.

### E.    Ground One:  Ineffective Assistance of Counsel

In Ground One, Villalobos asserts that his trial attorney provided ineffective assistance of

counsel in several ways: (1) by failing to gain admission of the "critical" evidence regarding April's violent conduct, (2) by failing to investigate April's history of violence, which would have revealed at least three instances of violence while intoxicated and may have justified admission of the excluded evidence, and (3) by failing to present to the jury full transcripts of the prison phone calls between Villalobos and April and photographs of one of April's prior victims.  (Pet. 13-18, ECF No. 1.)

### 1.   Legal Standard

A defendant claiming ineffective assistance of counsel ("IAC") must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' "  Richter, 131 S.Ct. at 787, *quoting* Strickland, 466 U.S. at 687.  To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different."  Strickland, 466 U.S. at 690, 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome"); *see* Richter, 131 S.Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable").  "Because failure to meet either [Strickland] prong is fatal to [an IAC] claim, there is no requirement that we 'address both components of the inquiry if the defendant makes an insufficient showing on one.' "  Gonzalez v. Wong, 667 F.3d 965, 987 (9th Cir. 2011), *quoting* Strickland, 466 U.S. at 697; *see* Bell v. Cone, 535 U.S. 685, 694 (2002) ("Without proof of both deficient performance and prejudice to the defense . . . the sentence or conviction should stand") (citation omitted).

### 2.   Evidence Regarding April's Violent History

The basis of Villalobos' initial argument is a little unclear.  Villalobos asserts that his attorney provided IAC by failing to gain admission of the "critical" evidence regarding April's history of violence.  He appears to argue that counsel's failure to convince the trial court that the proffered evidence was custom or habit evidence, rather than character evidence constituted ineffective assistance. (Pet. 59-60, ECF No. 1; Lodgment No. 3, pp. 25-26.)  To the extent Villalobos is asserting this argument, it is without merit as counsel properly raised and argued the issue and the fact that the

trial court decided against Villalobos did not transform counsel's conduct into ineffective assistance. Moreover, as discussed in Section C above, the appellate court concluded that the trial court did not err in reaching its decision and this Court finds that the ruling did not violate the United States Constitution.

Alternatively, Villalobos argues that his attorney provided IAC by failing to modify the defense to add a claim of self-defense.  In support of this argument, Villalobos explains that the trial court indicated to counsel that the evidence of April's history of violence was inadmissible character evidence under the current defense but may be admissible if there was a self defense argument. Villalobos claims that because the evidence was "critical" to his defense, counsel should have argued self-defense.  (Pet. 13-14, ECF No. 1.)

In support of his contention that his attorney was ineffective for failing to advance a self-defense theory, Villalobos argues the "statement in mitigation" at his trial shows "that trial counsel could have offered a self-defense theory on the suggestibility of the children, the physical evidence (many deep scratches to my face, two small scratches to April, and no harm to the children), and the testimony of April who said she was the first aggressor upon first contact with the police and at trial." (Pet. 15, ECF No. 1, *citing* CT p. 321.)  Without abandoning his explanation of the incident as it was presented to the jury, he selectively contends:

> 14.  The <u>only</u> evidence in front of the jury as to what happened the night of May 4, 2008 essentially consisted of varying testimony of two young children (through testimony at trial and investigators).  There was no weapon presented at trial, nor any photographs of a weapon.  There was no evidence of any injuries to either of the children.  There were only minor scratches on April, and she testified that her scratches were most likely a result of falling down at a bar (R.T. pp. 533, 544-545) while officers observed injuries to <u>my</u> face and head.  (R.T. pp. 534-536[.])

(Pet. 17, ECF No. 1.)

Villalobos minimizes the testimony of the children, the arresting officers who responded to the domestic violence call, and the investigators who interviewed the children, as well as the recorded 911 call.  (*See, e.g.*, Lodgment No. 2, RT vol. 4, 272-377.)  Admitted testimony from the preliminary hearing highlighted discrepancies in the defense version of events as presented through Herrera's trial testimony and undermined the candor and independence of the children's trial testimony compared to their earlier, more contemporaneous descriptions that Villalobos violently choked, punched, and

kicked Herrera then cut her arm with a knife and that he angrily hit Shyanne with the handle of a mop. (*See, e.g.,* Lodgment No. 2, RT vol. 5, pp. 244-272, RT vol. 4, pp. 189-225, RT vol. 7, pp. 596-621.) The jury had to resolve credibility issues and evaluate conflicting evidence, tasks this Court may not revisit and which arguably would have carried more risk to Villalobos if counsel had presented inconsistent, alternative defense theories. *See* Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (reviewing courts "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming the jury resolved all conflicts in a manner that supports the verdict").  Moreover, as discussed throughout this Report and Recommendation, contrary to Villalobos' current argument, the trial evidence did not clearly or easily support a theory of self-defense.

Counsel expressly informed the court at several junctures of her strategic decision not to pursue a self-defense theory.  For example, before finalizing its relevancy and habit versus character evidence rulings, the court inquired whether Villalobos would be arguing self-defense.  (Lodgment No. 2, RT vol. 6, pp. 480-481.)  Defense counsel emphasized:  "I was pursuing the issue under Evidence Code section 1105 which allows specific instances of behavior to be introduced to show conduct. . . .  [and which] I will elicit from Ms. Herrera herself, and I am not trying to present a self-defense case."  (Lodgment No. 2, RT vol. 4, pp. 114, 116 ("we are not raising self-defense").)  The issue arose again during jury instruction discussions and counsel confirmed that self-defense would be inconsistent with the defense she and Villalobos were pursuing.  (Lodgment No. 2, RT vol. 7, pp. 585-586.)

Competent trial counsel could decide on this record, in the exercise of reasonable professional judgment, that it would be strategically unwise to introduce the type of evidence required to support a self-defense theory.   A self-defense theory would have been antithetical to Villalobos' contention that he acted to prevent Herrera from hurting herself or harming the children, not because he felt personally threatened.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and reviewing courts defer to counsel's reasonable tactical decisions.  Strickland, 466 U.S. at 689.  Villalobos cannot rebut that presumption simply by identifying other strategies counsel could have pursued. *See* Siripongs v. Calderon, 133 F.3d 732, 736

1    (9th Cir. 1998) (courts resolving IAC claims do not inquiry into what means and strategies defense

2    counsel might have pursued, but rather they assess whether the choices counsel actually made were

3    reasonable).  "Representation is constitutionally ineffective only if it 'so undermined the proper

4    functioning of the adversarial process' that the defendant was denied a fair trial.' "  <u>Richter</u>, 131 S.Ct.

5    at 791, *quoting* <u>Strickland</u>, 466 U.S. at 686, 687.  This is not such a case.

### 3.    **Failure to Interview**

7        Villalobos faults his attorney for not interviewing and calling as witnesses certain family

8    members he contends had witnessed Herrera's "erratic behavior when she drinks and how her bi-polar

9    disorder causes her to randomly lash out" as well as other potential witnesses he contends knew of her

10   "violent emotional behavior" on other occasions.  (Pet. 15-17, ECF No. 1.)  He argues that allegedly

11   deficient performance caused the court to construe such evidence as character evidence which, by

12   statute, would permit rebuttal, rather than as "habit or custom" admissible "to prove conduct on a

13   specified occasion in conformity with the habit or custom."  (<u>Id.</u> pp. 15, 16.)

14       Initially, Villalobos fails to provide a declaration or other substantive evidence regarding the

15   facts to which the new witnesses would have testified.  Rather, Villalobos opines about what he thinks

16   each person would have said.  (<u>Id.</u>)  In his summaries, Villalobos describes "erratic behavior" by

17   Herrera, an "unstable relationship" between he and Herrera, a disorderly conduct arrest of Herrera,

18   and  an unattributed "expert" opinion that a person "can become violent and emotional" when bipolar

19   medication and alcohol are mixed.  (<u>Id.</u>)  Villalobos' speculation as to what evidence may exist does

20   not satisfy his burden of establishing that counsel's investigation was inadequate.  In addition, the

21   stated summary does not establish that the alleged new facts would have altered the trial court's

22   analysis.

23       The court and counsel discussed the admissibility and treatment of such evidence before and

24   during trial.  The trial court, not defense counsel, was ultimately responsible for characterizing the

25   evidence, a decision that affected its permissible uses and ramifications.  Those evidentiary rulings

26   demonstrably influenced counsel's tactical decisions, in particular whether to expose Villalobos to the

27   adverse rebuttal evidence the trial court indicated it would allow if defense counsel introduced the

28   evidence of Herrera's prior domestic violence conduct.  (*See, e.g.*, Lodgment No. 2, RT vol. 6, pp. 480-

481.)  Counsel was bound by those rulings and had to make the strategic choice whether to proceed at the risk of having Villalobos' defense theory undermined.

> Villalobos contends that defense counsel provided ineffective assistance when she decided not to introduce evidence of Herrera's prior violent conduct.  As his own argument demonstrates, however, defense counsel had a legitimate tactical reason for not seeking to introduce evidence of          Herrera's prior violent conduct because this would have opened the door to rebuttal evidence of Villalobos's prior conviction. Villalobos therefore fails to establish that defense counsel's failure to introduce evidence of Herrera's prior violent conduct constitutes ineffective assistance of counsel. (*People v. Lucas* (1995) 12 Cal.4th 415, 437 [a conviction cannot be reversed on the ground of ineffective assistance unless the record affirmatively demonstrates that counsel's complained of act or omission had no rational tactical purpose].)

(Lodgment No. 5, slip op. at 11.)

### 4.    Transcripts and Photographs

Villalobos also argues that his attorney was constitutionally ineffective because she "did not present the full transcripts of all the jailhouse phone calls between me and April" and did not present photographs of the alleged victim of one of Herrera's prior assaults.  (Pet. 16, ECF No. 1.)  In support of this argument, Villalobos states that during one of the calls, Herrera stated ""You should have seen what I did to the other person's face," referring to the victim in the 2004 incident.  (R.T. pp. 22-23)."

(Id.)    The two recorded jail phone calls Villalobos placed to Herrera were the subject of a motion in limine by the prosecution for their admission pursuant to Cal. Evid. Code § 1220 as admissions by a party opponent and as prior inconsistent statements, as they pertained to Herrera's inconsistent testimony.  The transcriptions were provided as exhibits to the motion.  (Lodgment No. 1, CT vol. 1 at 047-91.)  At the July 10, 2009 hearing of those motions, a redacted version was provided to defense counsel with the understanding by the court that, like the evidence of the 911 call, its ruling admitting that evidence would be subject to an objection before trial after counsel had an opportunity to review it.  (Lodgment No. 2, RT vol. 2 at 77.)  The recordings were played for the jury.  (Id. vol. 7 at 600-603.)

In this case, both counsel and the trial judge correctly concluded that the phone calls were extremely lengthy and contained significant amounts of irrelevant information.  (See, e.g., Lodgment No. 2, RT vol. 2 at 60.)  The specific statement identified by Villalobos, as well as the mentioned photographs, relate to Herrera's alleged propensity for violence and violent actions; the admission of

12cv1386-LAB(BLM)

1   which were governed by the court's character evidence ruling.  As discussed above, the state courts

2   did not err in limiting the introduction of this evidence.  Accordingly, counsel was not ineffective for

3   failing to gain admission of the evidence.  Moreover, the admissibility of the transcripts and calls were

4   discussed on the record and, again, the trial court's evidentiary rulings cannot be attributed to any

5   omission by defense counsel.

6              **5.    Prejudice**

7       Even if counsel was deficient in any of the alleged ways, Villalobos does not satisfy the

8   prejudice showing required for a successful Strickland claim.  He summarily contends:

9           Similar to *Williams v. Taylor*[, 529 U.S. 362, 398-99 (2000)], there is a
        reasonable probability that the result of the trial would have been different if the
10      evidence of April's drinking and subsequent violence had been presented to the jury,
        since the jury could have determined that April had gotten upset, taken the knife to use
11      on herself, and that I was trying to prevent her from hurting herself or anyone else.
        The jury could have concluded that the young children became frightened by their
12      mother's behavior, my reaction to her behavior, and therefore misunderstood what was
        happening.

13

14   (Pet. 18, ECF No. 1; *cf.* Williams, 529 U.S. 362 (finding IAC occurred during the sentencing phase

15   of a capital murder trial where counsel's failure to investigate the substantial evidence of the

16   defendant's childhood abuse and borderline mental retardation likely affected the outcome.))

17       Villalobos argues unpersuasively that a different trial result was a "reasonable probability" if

18   only the jury had heard additional evidence to support Herrera's admitted tendency to act out when

19   intoxicated; a speculative generalization that falls short of the "substantial" likelihood of a more

20   favorable outcome required to prevail on an IAC claim.  *See* Richter, 131 S.Ct. at 792.   Herrera

21   herself testified consistently with Villalobos' defense theory that she was emotionally upset and feeling

22   suicidal and that Villalobos was attempting to calm her down and to prevent her from cutting herself

23   with a knife she had picked up in the kitchen.  (Lodgment No. 2, RT vol. 6, pp. 530-568.)  However,

24   the prosecution impeached her on cross-examination with prior inconsistencies in her story and

25   discrepancies with testimony from other witnesses in connection with this particular incident.  (Id.)

26   In addition, as discussed above, there was substantial and credible evidence supporting the jury's

27   verdict.  Villalobos has not presented any non-speculative evidence to indicate that the there was a

28   reasonable probability that the jury would have reached a different verdict, even if the additional

information had been admitted.

For all the foregoing reasons, the Court **RECOMMENDS** that relief on Ground One be **DENIED**, as the state court's determination that Villalobos did not receive constitutionally deficient representation is not contrary to nor an unreasonable application of <u>Strickland</u> nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

### F.      Ground Six:  Cumulative Error

Although Villalobos alludes to a "Ground Six" in the form Petition and refers to his "Attachment" as articulating the factual and legal basis of his claims (Pet. 9, ECF No. 1), the scanned copy of his Petition facially identifies and elaborates only discrete Grounds One through Five.  (<u>Id.</u> 13-25.)  Respondent's Answer to the Petition does not acknowledge a sixth ground for relief.  (Ans. 2, ECF No. 9.)  However, a comparison of the lodged paper copy of the Petition to the scanned document reveals the scanned document is missing page 13, where Villalobos presents his cumulative error claim.  (*See* footnote 2, above.)  He lists six alleged trial errors as the factual basis for the claim. The first five expressly allude to discrete Grounds One through Five in his Petition.  He adds a sixth basis for relief under this theory, identified as miscellaneous "trial irregularities" such as trial delays and continuances.  (Lodged Petition p. 13.)  None of those is cognizable here due to failure to exhaust, lack of controlling federal authority to support the claim, and reliance on vague speculation.

The Ninth Circuit recognizes that the combined effect of discrete trial errors, even when none of them individually warrants relief, can in some circumstances have had a substantial and injurious effect on the jury's verdict. *See, e.g.*, <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th Cir. 2007), *citing* <u>Chambers</u>, 410 U.S. at 298, 302-03; <u>Alcala v. Woodford</u>, 334 F.3d 862, 882-83 (9th Cir. 2003).  Relief for cumulative prejudice necessarily presupposes that the Court will find substantial error occurred in connection with at least two of the petitioner's claims.  *See* <u>Hayes v. Ayers</u>, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible"), *citing* <u>United States v. Larson</u>, 460 F.3d 1200, 1217 (9th Cir.2006) (rejecting cumulative error claim where the court discovered no error in the defendants' trial).  Villalobos has not established that any substantial constitutional error occurred in his case under any of his five

1    cognizable claims.  Accordingly, the Court **RECOMMENDS** that relief on Ground Six be **DENIED**.

2           **G.**    **No Evidentiary Hearing Warranted**

3        Villalobos requests an evidentiary hearing.  (Pet. 1, ECF No. 1.)  Respondent argues he is not

4    entitled to an evidentiary hearing, citing 28 U.S.C. § 2254(d)(2) and Cullen v. Pinholster, 536 U.S.

5    __, 131 S.Ct. 1388 (2011).  (Ans. 2, ECF No. 9.)

6        AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing"

7    and prescribes the manner in which federal courts must approach the factual record.  Baja v.

8    Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Cullen, 131 S.Ct at 1400-01 ("Section 2254(e)(2)

9    imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary

10   hearing").  Moreover, "[b]ecause a federal court may not independently review the merits of a state

11   court decision without first applying the AEDPA standards, a federal court may not grant an

12   evidentiary hearing without first determining whether the state court's decision was an unreasonable

13   determination of the facts." Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005), *citing* Lockyer,

14   538 U.S. at 71; *see* Schriro, 550 U.S. at 474 ("Because the deferential standards prescribed by § 2254

15   control whether to grant habeas relief, a federal court must take into account those standards in

16   deciding whether an evidentiary hearing is appropriate").  "In practical effect, . . . this means that when

17   the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not

18   required to hold an evidentiary hearing.' " Cullen, 131 S.Ct. at 1401, 1399, *quoting* Schriro, 550 U.S.

19   at 474 ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief,

20   a district court is not required to hold an evidentiary hearing").

21       "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must

22   overcome the limitation of § 2254(d)(1) on the record that was before that state court." Cullen, 131

23   S.Ct. at 1400.   If a claim subject to 28 U.S.C. § 2254(d)(1) "does not satisfy that statutory

24   requirement, it is "unnecessary to reach the question whether § 2254(e)(2) would permit a [federal]

25   hearing on th[at] claim."[6]  Id., *quoting* Williams, 529 U.S. at 444.  For the reasons discussed below,

26
_____

       [6] "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court

27   shall not hold an evidentiary hearing on the claim unless the applicant shows that . . . the claim relies on . . .
a factual predicate that could not have been previously discovered through the exercise of due diligence and . . .

28   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for

it is recommended the Court find that none of Villalobos' claims warrants federal habeas relief pursuant to 28 U.S.C. § 2254(d)(1).  By its terms, 28 U.S.C. § 2254(d)(2) restricts federal habeas review to the state court record.  As Villalobos does not satisfy the exacting AEDPA standards prerequisite to receiving a hearing, the request is **DENIED**.

### III.      CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS RECOMMENDED** this habeas Petition be **DENIED** on the grounds that Petitioner is not in custody in violation of any federal right.  **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **April 1, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **April 22, 2013**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See* Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  March 11, 2013

_Barbara L. Major_

BARBARA L. MAJOR
United States Magistrate Judge

---

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).  Villalobos attempts no such demonstration.